

IN THE
TENTH COURT OF APPEALS

No. 10-20-00292-CR

IN RE WILLIAM CHARLES WEBB

***

IN THE
TENTH COURT OF APPEALS

No. 10-18-00170-CR

**WILLIAM CHARLES WEBB,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-675-C2

## CONCURRING OPINION

We do not know if the vodka bottle or the baby bottle mentioned in Webb's Chapter 64 motions still exist. That is not Webb's burden. He has alleged a plausible theory under which, if they exist, they could provide evidence that exculpates Webb. To quote a literary line, "The lady doth protest too much…." WILLIAM SHAKESPEARE,

HAMLET, act 3, sc. 2. In this instance, "the lady" is the State. I do not want this to turn into another Michael Morton situation where the State repeatedly resisted efforts to test biological evidence, only to find out that the item not only existed, but when it was finally independently tested, it contained DNA evidence that was exculpatory for Morton and led to the identity and conviction of the person who murdered Morton's wife.

And this is a problem of the State's making. The State has not complied with what is required by the statute when the motion for DNA testing is filed, possibly because the trial court has not compelled the State to perform its duty. *See* TEX. CODE CRIM. PROC. § 64.02. When the motion is filed, the statute requires the trial court to provide a copy of the motion to the attorney representing the State, hereinafter the DA. *Id.* (a)(1). The DA is required by the statute to

> …take one of the following actions in response to the motion not later than the 60th day after the date the motion is served on the attorney representing the state:
>
> > (A) deliver the evidence to the court, along with a description of the condition of the evidence; or
> >
> > (B) explain in writing to the court why the state cannot deliver the evidence to the court.

*Id.* (a)(2). I have found nothing in this record that suggests that the DA complied with this aspect of the statute.

Yes, there is a provision that the trial court can proceed in the event that the DA fails to file a response. *See id.* (b). But using that escape clause can lead to an endless do-loop, as we have seen here. As long as the motion is denied on procedural grounds, in essence, the failure to present a viable motion, the movant has the right to keep filing new motions.

The record does support an inference that the DA became aware of some of the Chapter 64 motions filed by Webb because the DA filed a response to some of them. But the responses filed by the DA mostly addressed the procedural aspects of the motion. Essentially, they assert that the motion is inadequate to get Webb over the first hurdle. If Webb could ever get over that first hurdle, the trial court could then address the actual merits of the Chapter 64 issue that has been repeatedly raised by Webb. After that, future Chapter 64 motions filed by Webb could be subject to the law of the case doctrine. *See State v. Swearingen*, 478 S.W.3d 716, 723 (Tex. Crim. App. 2015); *State v. Swearingen*, 424 S.W.3d 32, 37-38 (Tex. Crim. App. 2014). But until a decision is made on the merits, Webb can continue to file Chapter 64 motions until he gets it procedurally correct. *See In re Birdwell*, 393 S.W.3d 886, 893 n. 2 (Tex. App.—Waco 2012, orig. proceeding)("We do not hold that Birdwell is, or was ever, entitled to file a second or successive motion once his motion had been resolved on the merits and appealed under the statue in effect at that time."). Webb continues to learn what the deficiencies are and sooner or later he will file an adequate motion; he seems stubborn enough to get there. My fear is that when he does, the courts will be so calloused to the repetition, that they fail to see it.

On the other hand, this could have all been stopped long ago, if the DA would simply file the response that the statute requires and let the trial court proceed to a determination of the merits of whether there is something here that could be tested and if that test was favorable to Webb, would it likely lead to a different result in a trial regarding the determination of Webb's guilt. On this point, I find the Court of Criminal Appeals' alternative view of the burden very enlightening. The Court of Criminal Appeals said:

Alternatively, one could approach the "reasonable grounds" questions in the opposite direction. The trial judge could simply assume that the result of any proposed DNA testing is "exculpatory" in the sense that the test will prove that the inmate is not the source of that DNA. That is a "favorable" or "exculpatory" test result. But if that "favorable" or "exculpatory" finding would not change the probability that the inmate would still have been convicted, then there are no reasonable grounds to appoint an attorney and no justification for ordering any testing. A "favorable" DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply "muddy the waters."

*Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex. Crim. App. 2011).

If the vodka bottle and baby bottle (1) exist, (2) have been in the required control of the State, and (3) are suitable for testing, and if they were actually tested and, rather than having Webb's DNA on them, they have someone else's DNA on them, this could dramatically affect a factfinder's determination of whether there is reasonable doubt that Webb is the person who committed the offense. But until the DA files the response required by the statute, that is a journey that we cannot even start.

I respectfully concur only in the judgment of the court.

TOM GRAY
Chief Justice

Concurring opinion delivered and filed October 20, 2021

